WILLIAM THOMAS THOMSON et al., Respondents, v. THE BANK OF BRITISH NORTH AMERICA, Appellant.

On appeal to this court from a judgment entered on a decision of the court or the report of a referee, no fact can be considered for the purpose of reversing a judgment unless it is either stated in the findings, or was requested to be found on uncontroverted evidence.

Where a debtor pays his debt by a check to the order of his creditor or of one nominated by the latter, and the check is lost by or fraudulently obtained from the creditor, and is paid to the finder or fraudulent holder on a forged indorsement of the payee, the debtor is not discharged and may be again called upon to pay his debt; at least unless the check was taken in absolute payment and extinguishment thereof.

In March, 1870, plaintiffs drew their check on defendant against funds on deposit, receiving its check on the M. N. Bank for the amount, payable to the order of H., to whom plaintiffs proposed to loan the amount on her bond and mortgage. The loan had been negotiated by B., plaintiffs' attorney, who had procured the signature of H. to the bond and mortgage without knowledge on her part of the nature of the instruments. The check was certified by the M. N. Bank, the indorsement of H. was forged thereto, it was deposited by B. with his bankers, and was subsequently paid by the drawee, and the amount charged to defendant. B. procured the mortgage to be recorded and sent the papers to plaintiffs, who resided in Canada. B. paid the interest on the bond and mortgage until May, 1876, when he disappeared and the fraud was discovered. In

an action brought to open the accounts between the parties, which had been settled, and to recover the amount of said check, *held,* that in the absence of evidence that the certification of the check was obtained by plaintiffs or their authorized agent, or that the claim of defendant upon the M. N. Bank had been barred by the statute of limitations before notice of the forgery and demand of payment, plaintiffs were entitled to the relief sought ; that the M. N. Bank having paid the check on a forged indorsement was the party in default who should sustain the ultimate loss ; but inasmuch as from what appeared in the case defendant was the only party to whom that bank was liable, equity required it should make good the payment for which it had received credit and seek its reimbursement from the M. N. Bank.

*It seems* that had the plaintiffs procured the certification of the check, it would have been regarded as between them and defendant as paid, and they could not have recovered, their remedy being against the drawee.

*It seems,* also, that had it appeared that the delay of the plaintiffs in discovering and giving notice of the forgery had caused the defendant's remedy over against the M. N. Bank to be barred by the statute of limitations, plaintiffs would not have been entitled to have the account opened.

The lapse of six years is not a bar to an action to recover a deposit : the statute of limitations only begins to run from the time payment is refused.

(Argued June 7, 1880 ; decided September 21, 1880.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term. (Reported below, 13 J. & S. 1.)

On and before March 9, 1870, the defendants were bankers at the city of New York, having funds of plaintiffs on deposit. The plaintiffs wishing to invest in bond and mortgage, one William C. Barrett, their attorney, told them that he had arranged with Mrs. Margaret G. Halpine, that she should give her bond and a mortgage for a loan of $17,500. On the date specified, one of the plaintiffs drew on the defendant their check for $17,562, on the delivery of which defendant paid sixty-two dollars in money and a check, drawn at the plaintiffs' request, to the order of Mrs. Halpine, on the Merchants' National Bank, for $17,500. Before this date the attorney of the plaintiffs had been also

the attorney of Mrs. Halpine. In addition, he acted as her agent in caring for her property generally. She was in the habit of signing papers on his direction, without knowing their contents. She required $15,000, and negotiations to her knowledge were on foot to borrow it upon her bond and mortgage. On the 9th of March, at the request of the attorney, and without knowledge of the contents, she signed a bond and mortgage for $17,500 to the plaintiffs. On the same day the attorney deposited in his bank the check having thereon the words "Margaret G. Halpine." Mrs. Halpine had no knowledge of the receipt of the check. She did not indorse it, or authorize any one to do so on her behalf. On the day of its date, the check was certified by the Merchants' Bank. The court found that it did not appear by whom it was presented to be certified, nor was there any proof of the point in the various transfers when it was certified. On May 13, 1870, the loan for $15,000 was made upon Mrs. Halpine's bond and mortgage. That mortgage having been forthwith recorded, the attorney caused to be recorded, in June, the mortgage made to plaintiffs for $17,500, and sent it to the plaintiffs, who resided in Canada. From that time until 1876, the attorney paid to the plaintiffs the interest, but the interest falling due in May, 1876, was not paid, and Barrett about that time disappeared. Thereupon, the plaintiffs making inquiry, the nature of the transaction was disclosed. Mrs. Halpine brought her action to cancel the bond and mortgage to the plaintiffs, and had judgment to that effect. The check having been paid by the Merchants' Bank, its amount was charged to the defendant, and the check was sent to the defendant as a voucher for such charge and retained by it. The defendant charged the amount to plaintiffs about the time of the transaction, and the accounts between the parties were settled, and plaintiffs acquiesced in this until discovery of the fraud.

*John E. Parsons* for appellant. Where authority is conferred to do a particular thing, authority is implied to do

every thing necessary to accomplish it. (Story on Agency [8th ed.], §§ 58, 73, 85, 87, 97, 127, *n.* 2 and 1.) Where it is the intention of parties that commercial paper shall make payment, the debt is paid. (2 Daniel's Neg. Inst. 542; *Smith* v. *Miller*, 43 N. Y. 171; *Herring* v. *Sanger*, 3 Johns. Cases, 71.) The certification of the check by the Merchants' Bank operated not only like an acceptance of a bill of exchange, in making the Merchants' Bank primarily liable, but as to the defendant it was equivalent to the payment of the check, and absolutely discharged it. (*Robson* v. *Bennett*, 2 Taunt. 388; *Willets* v. *The Phœnix Bank*, 2 Duer, 121; *The Farmers and Mechanics' Bank* v. *The Butchers' & Drovers' Bank*, 4 id. 219; *S. C.*, 14 N. Y. 623; *Meads* v. *Merchants' Bank*, 25 id. 143; *Merchants' Bank* v. *State Bank*, 10 Wall. 603; *Cooke* v. *State National Bank of Boston*, 52 N. Y. 97; *First National Bank of Washington* v. *Whitman*, 4 Otto, 343; *Marine National Bank* v. *National City Bank*, 59 N. Y. 67, 71; *Freund* v. *Importers & Traders' National Bank*, 76 id. 352; *First National Bank of Jersey City* v. *Leach*, 52 id. 350; 1 Daniel on Neg. Ins. 395; *Bracken* v. *Willing*, 4 Call. [Va.] 288.) No matter who presented the check for certification, the effect of certification as to the drawer is the same. (*Freund* v. *Importers & Traders' National Bank*, 76 N. Y. 352.) It is not necessary that a person should be entitled to demand and receive payment of a check in order to enable him to procure it to be certified. (*Freund* v. *The Importers & Traders' National Bank*, 76 N. Y. 352.) Plaintiffs would not be barred in an action against the Merchants' Bank on this check, because the statute of limitations only runs from the presentation of a check for payment. (*Merchants' Bank* v. *State Bank*, 10 Wall. 605.)

*Samuel Hand* for respondents. Under an authority either to receive or pay out a precise amount of money, the receipt or payment of any larger or smaller sum is not authorized. (Story on Agency, §§ 171, 180.) The statute of limitations does not begin to run until demand. (*Downs* v. *Phœnix*

*Bank,* 6 Hill, 297; *Payne* v. *Gardiner,* 29 N. Y. 146; *Boughton* v. *Flint,* 74 id. 476.) The payment by the Merchants' Bank upon a forged indorsement would be no defense to that bank. (*Morgan* v. *N. Y. State Bank,* 11 N. Y. 404; *Graves* v. *American Exchange Bank,* 17 id. 205; *First Nat. Bank* v. *Whitman,* 94 U. S. 343; *Talbot* v. *Bank of Rochester,* 1 Hill, 295.) The bond and mortgage signed by Mrs. Halpine could not and did not operate as a discharge or satisfaction of the defendant's liability to the plaintiffs. (*Atlantic Dock Co.* v. *New York,* 53 N. Y. 64; *Muller* v. *Eno,* 14 id. 605; *Young* v. *Stahelin,* 34 id. 258.) The receipt of a check did not operate as a payment of the defendant's debt; and the plaintiffs had a right to demand payment of the original debt from the defendant, without having recourse to the check. (*Bradford* v. *Fox,* 38 N. Y. 239; *Turner* v. *Bank of Foxlake,* 4 Abb. Ct. App. 434; *Graves* v. *American Exchange Bank,* 17 N. Y. 205; *White* v. *Sweeny,* 4 Daly, 223.) The power to collect money or debts does not include the power to indorse paper received in payment. (*Murray* v. *East India Co.,* 5 B. & Ald. 204; *Hogg* v. *Snaith,* 1 Taunt. 347; *Graham* v. *U. S. Sav. Inst.,* 46 Mo. 126; *Holtsinger* v. *Nat. Com. Exchange Bank,* 1 Sweeny, 64; 6 Abb. [N. S.] 292; *Millard* v. *Bank Republic,* 16 Alb. L. J. 54.) The mere fact that a person claiming to be the agent of the payee of a check has the same in his possession does not confer upon him an apparent authority to receive payment thereon. (*Doubleday* v. *Kress,* 15 N. Y. 410, reversing 60 Barb. 181; *Wardrop* v. *Dunlop,* 1 Hun, 325.) There has been no such delay or acquiescence on the part of the plaintiffs as to constitute any bar to their claim. (*Weisser* v. *Denison,* 10 N. Y. 68; *Life Assoc.* v. *Siddal,* 8 DeGex, F. & J. 58, 74; Perry on Trusts, §§ 849, 851.) The proof of certification implies and the law presumes, from the fact that a check was given, that a deposit account was kept with the Merchants' Bank. (*White* v. *Ambler,* 8 N. Y. 170.) In the absence of proof to the contrary it is presumed that the relations of depositor and banker continued between the defendant and the Merchants' Bank down to the

time of the trial. (*Koenig* v. *Steckel*, 58 N. Y. 475; *Hassin* v. *Hubbard*, 55 id. 465; *Wilkins* v. *Earle*, 44 id. 172; *Cooper* v. *Dederick*, 22 Barb. 516.) Solvency is always presumed, especially in favor of a bank. (*Hart* v. *Hoffman* [Ct. App.], 44 How. 168; *Potter* v. *Merchants' Bank*, 28 N. Y. 641, 655; *Walrod* v. *Ball*, 9 Barb. 271.)

Rapallo, J.   Had it appeared in this case that the certification of the check given by the defendant to the plaintiffs was obtained by the plaintiffs or their authorized agent, or that the claim of the defendant upon the Merchants' Bank had been barred by the statute of limitations before the plaintiffs notified the defendant of the forgery, and demanded payment from it, there would be great difficulty in affirming this judgment. Ordinarily, where the payee or holder of a check which is payable immediately, instead of demanding payment procures the check to be certified, the check is as between the drawer and holder regarded as paid, and the holder must look to the bank whose obligation it has accepted in lieu of the money, because by procuring the certification he has caused an amount of the drawer's funds, or credit, equal to that for which the check was drawn, to be set apart for the payment of that check, and withdrawn from the control of the drawer, and his funds are as effectually diminished as if the money had been paid; while the bank has given a negotiable obligation to the holder of the check, which is equivalent to a certificate of deposit. If the holder of the certified check should lose it, he would still have his remedy upon it against the bank, but could not have recourse against the drawer whose funds had been thus locked up, or transferred to the credit of another party. And even the subsequent payment of the check by the bank upon a forged indorsement would not relieve it of its liability upon the contract it had made with the true owner, nor restore to the drawer the right to draw upon the bank for the funds which had been appropriated to the payment of the check, and were consequently no longer his. (*Freund* v. *Importers & Traders' Nat. Bk.*, 12 Hun, 537; affirmed, 76 N. Y. 352; *First Nat. Bk.* v. *Leach*,

52 id. 350; *First Nat. Bk.* v. *Whitman,* 4 Otto, 343.)  On the other branch of the case, if it were shown that the delay of the plaintiffs in discovering and giving notice of·the forgery had caused the defendant's remedy over against its own bank to be barred by the statute of limitations, there would be no equity in opening the settlement of accounts between plaintiffs and defendant for the purpose of shifting upon defendant a loss which, without any wrong or default on its part, the plaintiffs had sustained through the fraud of their own agent.

But neither of these defenses is established.  The findings are, " that the Merchants' Bank certified the check, but that by whom the same was presented for certification, or when it was so certified, does not appear."  Although the evidence might justify the inference that the certification was obtained by Barrett, there is no finding of that fact, and no request to find it, or to find that the check was certified at the instance of any authorized party, or that any contract was made by the bank with any one lawfully holding the check, and it is the settled law that on appeal to this court no fact can be considered for the purpose of reversing a judgment, unless it is either stated in the findings, or requested to be found, on uncontroverted evidence.

On the subject of the statute of limitations there are no findings or requests to find facts showing that the defendant's claim against its own bank was barred when reclamation was made upon it by the plaintiffs.  There is no finding or request to find at what date this reclamation was made, and even if it were found not to have been made until after the expiration of six years from the payment of the check, it does not appear that the account of the defendant with its own bank was ever balanced, or that six years had elapsed from the time that the defendant had knowledge that the check had been paid, or charged to it in its account with its bank.  The finding is that the Merchants' Bank is, and always has been, a good solvent institution, and the defendant has kept a running account with said bank and has had a balance to its credit as a depositor

therein, continuously from the day upon which the said defendant's check was drawn down to the present time.

The Merchants' Bank being under no outstanding liability on its certification, which has been surrendered, and it not appearing that any lawful holder ever was entitled to the benefit of the certification, nothing appears which should impede the recovery by the defendant against it for the balance which would remain to the credit of the defendant, if the charge of the bank for the payment of the check on the forged indorsement were disallowed, as it doubtless would be. The finding is that the charge was made on the payment of the check, and it is well settled that a bank paying upon a forged indorsement must bear the loss, and cannot charge the payment to its depositor. (*First Nat. Bank* v. *Whitman*, 4 Otto, 343.) The lapse of six years is not a bar to an action for a deposit. The statute begins to run only from the time payment is refused. Thus, from all that appears in the case, the defendant has its remedy against its own bank for the amount thus wrongfully paid out.

The case then presents the simple question whether a party paying his own debt by a check to the order of his creditor, or of a party nominated by his creditor, can be called upon to pay it again, in case the creditor loses or is defrauded of the check, and it is paid to the finder or fraudulent holder, on a forged indorsement. We think this question should be answered in the affirmative, unless in some very special case, if such a case can be supposed, where the check was taken in absolute payment and extinguishment of the debt. What the rights of the parties might be in such a case it is not necessary to determine.

For the reasons before stated, the case is not varied by the circumstance that the check was certified after delivery and before payment, it not being shown that such certification was procured by the creditor to whom the check was given, or by the payee of the check. If the check had been lost and the finder had procured it to be certified, and forged the indorsement, the certification would not be binding upon the bank, nor affect the rights of the parties after it had been surrendered.

It is only in case the true owner of the check had received the certification, that recourse could have been had upon it against the certifying bank, notwithstanding the subsequent loss of the check and the payment upon the forged indorsement. (*First Nat. Bank* v. *Whitman*, 4 Otto, 343.) In this case, for all that appears, the certification may have been obtained by the bank to which Barrett transferred the check by the forged indorsement, and had it placed to his own credit. Neither the plaintiffs nor Mr. Halpine would have acquired any right of action against the Merchants' Bank by virtue of such a certification, unless they regained possession of the check, or adopted the act of the wrongful holder in obtaining the certification, before payment of the check to such wrongful holder.

In this case there is the additional circumstance that the account between the plaintiffs and the defendant, in which the check is charged to the plaintiffs, has been settled and closed, and it is necessary to open this account in order to afford relief to the plaintiffs. If the delay in applying to open this account had been such as to deprive the defendant of its remedy over against the Merchants' Bank, we should hesitate to say that the relief should be granted at the expense of the defendant, who has been guilty of no default. But as it has not been shown that the defendant has lost its right of action against the Merchants' Bank, and the account between the plaintiffs and defendant was settled and balanced under a mistake of fact, we do not think that it was erroneous to allow that settlement to be opened, and to permit the plaintiffs to show that they never received payment of the check, and that it was returned to the defendant without a valid payment. The Merchants' Bank, having paid the check on a forged indorsement, is the party in default, who should sustain the ultimate loss, but we think that inasmuch as, from all that appears in this case, the defendant is the only party to whom the Merchants' Bank is liable, equity requires that the defendant should make good the payment for which it has received credit in its account with the plaintiffs, and seek its reimbursement from the Merchants' Bank. Otherwise the plaintiffs would be remediless.

The point made by the appellant's counsel that Barrett was authorized to indorse the check with the name of Mr. Halpine, and that the indorsement was therefore valid, is not tenable for various reasons.

First, although the circumstances tend strongly to show that Barrett made the indorsement, that fact is not found. Secondly, it is not found that Barrett was authorized to receive the money for Mrs. Halpine. On the contrary, she denies such authority; and finally, we are not prepared to hold that when a payment is made to an agent, by a check payable to the order of his principal, the authority to receive the payment is of itself sufficient to authorize the agent to indorse his principal's name on the check. It is sufficient, however, for the purposes of the present case to say that the necessary facts are not found, upon which to raise that question.

The judgment should be affirmed.

All concur.

Judgment affirmed.